Case 2:18-cv-00253   Document 22   Filed on 03/06/19 in TXSD   Page 1 of 17

United States District Court
Southern District of Texas
**ENTERED**
March 06, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| WILLIAM SMITH; aka BILL, | § | |
| | § | |
| Petitioners, | § | |
| VS. | § | CIVIL ACTION NO. 2:18-CV-253 |
| | § | |
| LORI DAVIS, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner, William Smith (#1744491), is an inmate in the Texas Department of Criminal Justice-Correctional Institutions Division ("TDCJ-CID") and is currently incarcerated at the Garza West Unit in Beeville, Texas. Petitioner filed this petition pursuant to 28 U.S.C. § 2254 on August 22, 2018 challenging his 2011 Nueces County conviction for driving while intoxicated. (D.E. 1). On November 14, 2018, Respondent filed the pending Motion for Summary Judgment to which Petitioner responded on December 10, 2018. (D.E. 20 and D.E. 21). This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b). For the reasons stated below, the undersigned recommends Respondent's Motion for Summary Judgment be **GRANTED** and this action be **DISMISSED**. It is further recommended that a Certificate of Appealability be **DENIED**.

## I. JURISDICTION

The Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 2241 and 2254. A habeas action may be filed either in the district where petitioner is in custody or in the district in which petitioner was convicted. 28 U.S.C. § 2241(d); *Wadsworth v. Johnson*, 235 F.3d 959, 961 (5th Cir. 2000). Jurisdiction and venue are proper in this Court because Petitioner was convicted in Nueces County, Texas, and is in custody in Bee County, Texas, both of which are within the Corpus Christi Division of the Southern District of Texas. 28 U.S.C. § 2241(d); *Wadsworth v. Johnson*, 235 F.3d 959, 961 (5th Cir. 2000); 28 U.S.C. § 124(b)(6).

## II. BACKGROUND

### A. Factual Background

The factual background of this case is summarized in Petitioner's Petition, Respondent's Motion for Summary Judgment and in the Court of Appeals for the Thirteenth District of Texas' November 13, 2014 and December 15, 2016 decisions. (D.E. 1 and D.E. 20, Pages 3-8); *Smith v. State of Texas*, 557 S.W.3d 6 (Tex. App – Corpus Christi 2014) *rev'd* 499 S.W.3d 1 (Tex. Crim. App. 2016); and *Smith v. State of Texas*, No. 13-11-694-CR, 2016 WL 7242846, at *1 (Tex. App –Corpus Christi Dec. 15, 2016, no pet.). The following is a brief summary of the facts.

On February 8, 2011, Petitioner was stopped by state trooper David Anguiano for driving without wearing a seatbelt. (D.E. 20, Page 4); *Smith*, 499 S.W.3d at 2. Trooper Anguiano then smelled alcohol and noticed Petitioner's "movement was slightly delayed, and his eyes were a little glassy and bloodshot." *Id*. After various tests were conducted

indicating Petitioner was impaired, he was arrested. Petitioner refused to take a breath test and, after he was placed in the patrol car, he became belligerent, kicking his feet and cursing. Trooper Anguiano then found at least three cold open alcohol containers in Petitioner's vehicle. Petitioner, who had two prior convictions for driving while intoxicated, was then taken to the hospital in a "caged unit" for a blood draw, which indicated Petitioner had a blood alcohol concentration of .21 grams of alcohol per 100 milliliters of blood. The results of Petitioner's blood draw were admitted at trial over trial counsel's objection.

    **B.**    **Procedural Background**

On September 29, 2011, Petitioner was convicted by the court of driving while intoxicated ("DWI") (third offense) and, as a habitual felony offender, he received the minimum sentence of 25 years confinement. (D.E. 18-1, Pages 4-5 and 25-26). The Thirteenth Court of Appeals reversed Petitioner's conviction and remanded the case to the trial court, finding the warrantless search of Petitioner's blood was conducted in violation of his Fourth Amendment rights. *Smith*, 557 S.W.3d at 14. However, considering a Petition for Discretionary Review, the Texas Court of Criminal Appeals ("CCA") found Petitioner failed to preserve the error with respect to the Fourth Amendment complaint regarding the admission of the blood test results and reversed the Thirteenth Court of Appeals' decision. *Smith*, 499 S.W.3d at 5-6. The CCA then remanded the case for the Thirteenth Court of Appeals to consider Petitioner's remaining points of error, specifically whether the trial court erred by refusing to appoint a new attorney on the first day of trial, by overruling objections regarding the fingerprint expert,

and whether there was insufficient evidence regarding Petitioner's two prior felony convictions. *Smith*, 2016 WL 7242846, at *1. On remand, the Thirteenth Court of Appeals affirmed Petitioner's conviction on December 15, 2016. *Id*.

Petitioner filed an application for state habeas relief on or June 12, 2017 which was denied without written order on June 6, 2018. (D.E. 19-20 and D.E. 19-29, Page 20). Petitioner then filed the pending application for federal habeas relief on August 22, 2018. (D.E. 1, Page 10).

### III. ANTITERRORISM AND EFFECTIVE DEATH PENATLY ACT OF 1996 ("AEDPA") 28 U.S.C. §2254

Federal habeas relief is available to a state prisoner only if he is being held in violation of the Constitution, laws, or treaties of the United States. *Boyd v. Scott*, 45 F.3d 876, 881 (5th Cir. 1994) (per curiam) (citation omitted). Under AEDPA, a state prisoner may not obtain relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:

> (a) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (b) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.
>
> 28 U.S.C. § 2254(d)

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the U.S. Supreme Court on a question of law or if the state court decides a case differently than the Court on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal

habeas court may grant the writ if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies the principle to the facts of the prisoner's case. *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). Although "unreasonable" is difficult to define, the Court noted it is an objective, rather than subjective, standard and emphasized that there is a critical difference between an unreasonable application of federal law and a merely "incorrect" or "erroneous" application of federal law. *Neal v. Puckett*, 239 F.3d 683, 687 (5th Cir. 2001) (citing *Williams*, U.S. 362 at 412-413).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fair minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). A federal habeas court must determine what theories or arguments supported, or could have supported, that state court's decision. Then it must ask whether it is possible that fair minded jurists could disagree that the arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *Harrington*, 131 S. Ct. at 786. Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *Id*. (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)).

The standard is very difficult to meet. "As amended by AEDPA, § 2254(d) stops short of the imposing a complete bar on federal court litigation of claims already rejected in state proceedings…It preserves authority to issue the writ in cases where there is no possibility fair minded jurists could disagree that the state court's decision conflicts with

this Court's precedents. It goes no farther." *Id*. "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement." *Id*. at 786-787. In addition, if a decision by a state court is silent as to the reasons for the refusal, a federal habeas court can "look through" the decision and evaluate the last reasoned state court decision. *Bledsue v. Johnson*, 188 F.3d 250, 256 (5th Cir. 1999).

A state court's factual findings are presumed to be correct and a petitioner has the burden of rebutting the presumption with clear and convincing evidence. *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006). This deference extends not only to express findings of fact, but to the implicit findings of the state court. *Id*. In addition, "where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 784.[1]

## IV. SUMMARY JUDGMENT

In deciding a motion for summary judgment, the district court must determine whether the pleadings, discovery materials, and the summary judgment evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Once the movant presents a properly

---

[1] Here, the state habeas court denied relief without a written opinion, and in such a situation, the AEDPA standard of review applies. *See Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003) (citations omitted). A denial without written order is an adjudication on the merits. *Barrientes v. Johnson*, 221 F.3d 741, 780 (5th Cir. 2000) (citations omitted).

supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software, Inc.,* 232 F.3d 473, 477 (5th Cir. 2000).

Rule 56 of the Federal Rules of Civil Procedure generally applies to federal habeas corpus cases. *Clark v. Johnson*, 202 F.3d 760, 764-65 (5th Cir. 2000) (citations omitted); *see also* Fed. R. Civ. P. 81(a)(4)("These rules apply to proceedings for habeas corpus...."). While summary judgment rules apply with equal force in a § 2254 proceeding, the rules only apply to the extent that they do not conflict with the federal rules governing habeas proceedings. Therefore, Section 2254(e)(1), which mandates that a state court's findings are to be presumed correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmovant. Accordingly, unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, such findings must be accepted as correct by the federal habeas court. *See Smith v. Cockrell,* 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke,* 542 U.S. 274 (2004).

V.  **PETITIONER'S GROUNDS FOR RELIEF**

Petitioner alleges (1) he received ineffective assistance of trial counsel and (2) the CCA erred by failing to retroactively apply the *McNeely* decision. (D.E 1); *Missouri v. McNeely*, 569 U.S. 141 (2013). For the reasons discussed below, the undersigned recommends Petitioner's arguments are without merit.

### A.     Ineffective Assistance of Trial Counsel

All of Petitioner's ineffective assistance of counsel claims relate to the blood draw.  Specifically, Petitioner claims his trial counsel was ineffective because he (1) failed to sufficiently object to the testimony of blood test results that he understood to be inadmissible; (2) failed to obtain a ruling on Fourth Amendment grounds regarding the admissibility of the blood test results; (3) and failed to competently litigate a meritorious Fourth Amendment claim excluding the blood test results.  (D.E. 1).  However, upon review of the record, the undersigned recommends Petitioner's trial counsel was not deficient under *Strickland* and Petitioner has therefore failed to make the required showing that the state court's rejection of his ineffective assistance of counsel claim was an unreasonable application of *Strickland*.

The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal.  To prevail on an ineffective assistance of counsel claim, a petitioner must meet the two-prong test set out in *Strickland v. Washington*.  466 U.S. 668 (1984).  Petitioner must show counsel's performance fell below an objective standard of reasonableness and that deficient performance prejudiced the defense.  To be cognizable under *Strickland*, trial counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id*. at 687-88.  Petitioner must prove he was prejudiced by his attorney's substandard performance, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Id*. at 687.  Petitioner then "must show that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different." *Id*. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 131 S. Ct. 770, 792 (2011) (citations omitted). Petitioner must show a reasonable probability that, but for defense counsel's alleged errors, he would have received a significantly less harsh sentence. *Miller v. Dretke*, 420 F.3d 356, 366 (5th Cir. 2005); *Charles v. Thaler*, 629 F.3d 494, 499 (5th Cir. 2011).

Judicial scrutiny of counsel's performance must be highly deferential and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. A court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance while recognizing that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.* at 689. The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms." *Id*. at 690.

In addition, federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). Where the

9 / 17

state court adjudicated an ineffective assistance claim on the merits, this Court must review petitioner's claim under both *Strickland* and § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions fell below *Strickland's* standard – it is "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 131 S. Ct. at 785.

Petitioner contends his counsel's performance was deficient because he failed to sufficiently and successfully object to the admission of the result of the blood sample which Petitioner asserts violated his constitutional right to be free of an unreasonable search, thereby preserving the issue for appellate review. The undersigned recommends Petitioner has failed to prove his trial counsel's conduct was deficient or he suffered prejudice. Petitioner's attempt to raise a Fourth Amendment and/or ineffective assistance of counsel claim under the Supreme Court decision in *McNeely* fails. In *McNeely*, the Court found that the need for a warrant to obtain blood in connection with an arrest for driving while intoxicated must be determined on a case by case basis under the totality of the circumstances. 569 U.S. at 141 (holding the dissipation of alcohol in the blood alone does not constitute exigent circumstances justifying a warrantless blood draw from a DWI suspect). However, *McNeely* was decided in 2013 after Petitioner's trial. Petitioner's counsel cannot be deemed ineffective for failing to anticipate a case decided after Petitioner's trial. The Fifth Circuit has repeatedly held that "there is no general duty on the part of defense counsel to anticipate changes in the law." *United States v. Fields*, 565 F.3d 290, 294 (5th Cir. 2009).

Further, Petitioner has not met his burden of proving the blood draw would have been suppressed as a result of an adequate motion or objection. *Hazlip v. Davis*, No. H-16-0607, 2017 WL 4280727, at *22 (S.D. Tex. Sept. 27, 2017) (citing *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)). At the time of Petitioner's offense and at his trial, the Texas Transportation Code provided that any person arrested for driving while intoxicated was deemed to have consented to taking one or more specimens of blood or breath to analyze the alcohol concentration amount or presence of a controlled substance. Tex. Transp. Code § 724.011. A person did retain the right to refuse to give a specimen, subject to automatic suspension of his license. Tex. Transp. Code § 724.013. However, if a suspect refused to provide a specimen voluntarily and the arresting officer had credible information that the suspect had at least two prior DWI convictions, then the "taking of a specimen of the person's breath or blood" was mandatory. Tex. Transp. Code. § 724.012(b)(3)(B). Under the established law at the time of Petitioner's trial, taking a blood sample in these circumstances did not violate the Fourth Amendment warrant requirement. *Hazlip*, 2017 WL 4280727, at * 24 (citing *Beeman v. State*, 86 S.W.3d 613, 616 (Tex. Crim. App. 2002) (Implied consent and mandatory blood draw provisions gave "officers an additional weapon in their investigative arsenal, enabling them to draw blood in certain limited circumstances even without a search warrant.")) Therefore, in this case, the warrantless blood draw was sanctioned, if not required, by the state statute and then-controlling case law because Petitioner had at least two prior DWI convictions. At the time of Petitioner's trial, there was no legal precedent for the argument that the taking of the blood sample pursuant to the relevant Texas statutes

11 / 17

violated Petitioner's Fourth Amendment rights. This law changed a year after *McNeely* was decided when the CCA held "a nonconsensual search of a DWI suspect's blood conducted pursuant to the mandatory blood draw and implied consented provisions in the Transportation Code, when undertaken in the absence of a warrant or any applicable exception to the warrant requirement, violates the Fourth Amendment." *State v. Villareal*, 475 S.W.3d 784, 815 (Tex. Crim. App. 2014).

Because Petitioner's blood was drawn under a state statute that was presumptively valid at the time of his trial, Petitioner does not show his attorney acted unreasonably by failing to pursue what would have then been a futile motion. Petitioner has not demonstrated his counsel failed to make an argument that would have been successful when his criminal case was pending. At the time of Petitioner's trial, motions to suppress warrantless blood samples taken pursuant to Texas Transportation Code § 724.012 were routinely denied. *Sherry v. Davis*, No. A-15-CV-0574-RP, 2017 WL 1417389, at * 5 (W.D. Tex. Apr. 20, 2017) (citations omitted). Therefore, the state court's denial of Petitioner's ineffective assistance claim comports with *Strickland* as Petitioner has failed to demonstrate his trial counsel's performance was deficient.

Additionally, as to actual prejudice, Petitioner has failed to establish a reasonable probability his sentence would have been significantly less harsh if the blood draw had been suppressed. Petitioner contends there is no indication of what other evidence supported his conviction. (D.E. 21, Pages 11-12). While the evidence of the blood draw showing a blood alcohol level of .21 was undoubtedly important, this was far from the only evidence that Petitioner was guilty of driving while intoxicated. After pulling

Petitioner over for a seatbelt violation, Officer Anguiano immediately noticed the smell of alcohol coming from inside the car. (D.E. 18-2, Pages 23 and 31). He also noted Petitioner was displaying physical signs of intoxication, such as glassy, bloodshot eyes and slightly delayed movement. (D.E. 18-2, Pages 23, 31 and 34). Officer Anguiano further completed a series of field sobriety tests which indicated signs of intoxication. (D.E. 18-2, Pages 23-31).

Further, Petitioner refused the breath test, acted belligerently, and Officer Anguiano observed at least three cold open alcohol containers in Petitioner's vehicle. (D.E. 18-2, Pages 31, 35-36, 40-41 and 43); *Bartlett v. State*, 270 S.W.3d 147, 153 (Tex. Crim. App. 2008) (refusal to take breath test may be introduced into evidence at trial to show consciousness of guilt). Additionally, a video of the stop was played for the trial judge, including Petitioner's attempts to complete the field sobriety tests. (D.E. 18-2, Pages 12-42). In closing, the prosecutor did not rely solely upon the blood draw but also directed the trial judge to this additional evidence. (D.E. 18-3, Pages 56-57). Therefore, Petitioner cannot establish he was prejudiced by the failure to suppress the BAC evidence of intoxication.

Lastly, the Fifth Circuit has stated a "conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Miller*, 420 F.3d at 361 (citation omitted). During Petitioner's state habeas action, Petitioner's trial counsel testified that his constitutional objection to the warrantless blood draw was a long shot because it had never before been successfully challenged. (D.E. 19-

13 / 17

15, Page 23). He further testified the trial judge was not inclined to grant the objection without case law in support and he "could not find any case law to substantiate that position I don't think one way or another, which kind of surprised me." (D.E. 19-25, Pages 24 and 28-29). Therefore, defense counsel offered a reasonable tactical or strategic explanation for not continuing with his objection to the blood draw and this explanation is entitled to substantial deference. *Strickland*, 466 U.S. at 689.

### B. State Habeas Proceedings and *McNeely*

In his last ground for relief, Petitioner alleges the CCA erred when considering his state habeas petition by failing to retroactively apply *McNeely* in his case. (D.E. 1-1, Pages 6-7). However, this final ground for relief is not cognizable on federal habeas review as infirmities in state habeas corpus proceedings do not state a claim for federal habeas corpus relief. *See Vail v. Procunier*, 747 F.2d 277 (5th Cir. 1984); *see also Wheat v. Johnson*, 238 F.3d 357, 361 (5th Cir. 2001) (citations omitted). An attack on a state habeas proceeding does not entitle the petitioner to federal habeas relief in connection with his conviction because an attack on the state habeas proceeding is a challenge to the proceeding collateral to the detention and not a challenge to the detention itself. *See Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995). Any errors in a state habeas proceeding cannot serve as a basis for setting aside a valid original conviction. *Id*. Therefore, the undersigned recommends Petitioner's final ground for relief be denied. Further, even if the Court were to consider Petitioner's argument, the undersigned recommends the *McNeely* decision was not made retroactively applicable to cases on

collateral review. *Aguilar v. Davis*, No. 3:16-cv-327, 2017 WL 3493274, at *2 (S.D. Tex. Aug. 14, 2017) (citations omitted).

## VI. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the Court of Appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Petitioner has not yet filed a notice of appeal, it is respectfully recommended that this Court nonetheless address whether he would be entitled to a certificate of appealability ("COA"). A District Court ruling on a petitioner's relief may *sua sponte* rule on a COA because it "is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just rule on would be repetitious." *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000)(per curiam).

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). As to claims the Court rejects solely on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). As to claims the Court rejects solely on procedural grounds, the Petitioner must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a

constitutional right <u>and</u> that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*. (emphasis added)

In Petitioner's case, reasonable jurists could not debate the dismissal or denial of the Petitioner's §2254 petition on substantive or procedural grounds, nor find that the issues are adequate to deserve encouragement to proceed. *Miller-El*, 537 U.S. at 327. Accordingly, it is respectfully recommended the Court not issue a certificate of appealability.

## VII.  RECOMMENDATION

Having independently reviewed the state record and considered Petitioner's claims for federal habeas relief, the undersigned recommends nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence. Accordingly, for the reasons stated above, it is respectfully recommended that Respondent's Motion for Summary Judgment (D.E. 20) be **GRANTED** and Petitioner's application for habeas corpus relief be **DISMISSED**. It is further recommended that a Certificate of Appealability be **DENIED**.

ORDERED this 6th day of March, 2019.

Jason B. Libby<br>United States Magistrate Judge

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(c); Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a Magistrate Judge's report and recommendation within **FOURTEEN (14) DAYS** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).